Defendant has filed a motion to dismiss plaintiff's claim pursuant to Industrial Commission Rules 609 and 701 for plaintiff's failure to file an Industrial Commission Form 44 or a brief in this matter. Although defendant's motion is well-founded and could therefore be granted, the Full Commission, in its discretion, chooses to rule on the merits in this case.
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lorrie L. Dollar. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in the Pre-Trial Agreement filed with Deputy Commissioner Dollar in November 16, 1993, and at the hearing as:
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and the employment relationship existed between the parties at all relevant times.
2. The defendant is a duly qualified self-insured, through a municipal risk pool, North Carolina Interlocal Risk Management Agency.
3. The plaintiff's average weekly wage on May 11, 1991 was $224.80, which yields a compensation rate of $149.87.
4. At the hearing, the parties stipulated the following documents into evidence:
a. Plaintiff's Recorded Statement;
b. I.C. Form 18's;
c. Defendant's Interrogatories to Plaintiff;
d. Medical records of Halifax Memorial Hospital;
e. Medical records of Dr. J. K. Antony;
f. Medical records of Dr. Ganesh Bissram;
g. Medical records of Dr. Charles Sawyer;
h. Medical records of Dr. Gene Hamilton;
i. Medical records of Dr. Raven DeLoatch;
j. Medical records of Dr. E. O. Marsigli;
k. Physical therapy records;
l. Social Security Disability records; and
m. Payroll records of plaintiff from 1991.
5. The issues for determination are:
 a. Whether plaintiff sustained a compensation injury on May 11, 1991, and if so, the compensable consequences; and
 b. Whether plaintiff provided timely notice of accident pursuant to N.C. GEN. STAT. § 97-22.
6. Following the initial hearing, the record remained open for the production of additional testimony by depositions of Dr. Jose Antony, Dr. Ganash Bissram, Dr. E. O. Marsigli, Dr. John H. Stanley, and lay witness, Frances Futrell which were received into the record. All objections raised therein are ruled upon in accordance with the law and this Opinion and Award.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the initial hearing, the plaintiff was a 54 year old male with a sixth grade education. The plaintiff had limited reading ability and is capable of writing his name.
2. The plaintiff began working as a maintenance worker with defendant in 1982, where his duties included operating a backhoe to dig water lines, driving a riding lawnmower to cut grass, driving a John Deere tractor to drag gravel streets, checking gas pumps, and driving the garbage truck.
3. The plaintiff has been diagnosed with myositis, bursitis in his right shoulder, and synovitis of the right shoulder prior to May 11, 1991. The plaintiff was treated with cortisone injections in the right shoulder. On October 16, 1990, Dr. Bissram, an orthopedic surgeon, diagnosed plaintiff with subacromial bursitis, noted arthritic changes in the AC joint (spurring), after plaintiff presented complaints of pain in the right shoulder area.
4. On February 1, 1991, the plaintiff had a flare-up of his bursitis, and Dr. Bissram administered a cortisone injection. Other than this visit, the plaintiff was not seen again during 1991 for any complaints regarding the right shoulder. The plaintiff reported to Dr. Bissram that the injections relieved his pain.
5. Outside of work, the plaintiff operated a lawn moving business and raised pigs.
6. On or about May 11, 1991, the plaintiff was using the tractor to drag gravel on Depot Street. When he got off of the tractor to reverse the blade face, the plaintiff contends he slipped on loose gravel and struck his right shoulder on the top edge of the blade. The plaintiff verbally reported this to Mr. George Douglas Vick, who was his supervisor. Mr. Vick instructed the plaintiff to go to Dr. Burton, the town's doctor. Mr. Vick did not observe any tears or blood on plaintiff's shirt, and could not tell if plaintiff had suffered any cuts.
7. The plaintiff did not go to Dr. Burton or to any other doctor during May of 1991.
8. A number of weeks after the incident, Mr. Vick asked the plaintiff for a copy of the report from Dr. Burton. The plaintiff told Mr. Vick that Dr. Burton's office would not give him a copy of the report. Mr. Vick went to Dr. Burton's office, where he was advised that plaintiff had never reported there to be examined. Mr. Vick returned to the work site and confronted plaintiff about this, and plaintiff made no excuses.
9. On June 3, 1991, the plaintiff went to Dr. Jose Antony, his treating cardiologist since 1986, at which time plaintiff complained of vague chest discomfort and tingling in his right arm. Plaintiff provided a history of having hurt his right arm when a blade fell on him. Examination disclosed no indication of recent trauma to the right shoulder, and Dr. Antony noted symptoms the same as those noted in a January 8, 1991 visit. Dr. Antony referred plaintiff to Dr. Bissram, but plaintiff did not follow through on the referral.
10. The plaintiff was again seen by Dr. Antony on August 15, 1991 and September 13, 1991, with similar complaints of shoulder pain.
11. On December 3, 1991, plaintiff was seen by Dr. Antony for complaints of pain after hitting his right arm on a tractor.
12. On February 27, 1992, plaintiff was seen by Dr. Bissram for complaints of pain in the right shoulder for one week. The plaintiff denied the pain was the result of an injury.
13. The plaintiff went to Mr. Vick and asked him to suggest a doctor that he should see. Mr. Vick referred plaintiff to Dr. Charles Sawyer, who was Mr. Vick's doctor. The plaintiff was seen by Dr. Sawyer on March 17, 1992, as was referred to orthopedist Dr. Gene Hamilton in Greenville for suspected rotator cuff tear.
14. On March 31, 1992, Dr. Hamilton examined plaintiff and ordered x-rays which showed degenerative changes in the acromioclavicular joint. Dr. Hamilton suspected brachial plexus palsy or an injury to the AC joint. Dr. Hamilton ordered nerve conduction studies on April 29, 1992 and a follow-up on May 6, 1992; however, plaintiff did not return for either appointment.
15. The plaintiff testified that he did not go to see the doctor in Greenville, Dr. Hamilton, because the doctor refused to see him. This statement is not accepted as credible, as Dr. Hamilton's records clearly establish that plaintiff was examined and follow-up visits were set, for which plaintiff chose not to return.
16. On June 30, 1992, the plaintiff was seen by Dr. Raven DeLoatch, at which time he related a history of a February 1992 injury to his right shoulder. Dr. DeLoatch observed plaintiff was unable to raise his right hand over his head and diagnosed plaintiff as having right frozen shoulder and right carpal tunnel syndrome.
17. Dr. DeLoatch referred plaintiff to Dr. Marsigli on October 16, 1992 for orthopedic treatment. At that time, plaintiff related a history of an accident on February 2, 1992.
18. On November 20, 1992, Dr. Marsigli performed arthroscopic surgery on the plaintiff's right shoulder, at which time the rotator cuff was found to be completely torn. Dr. Marsigli performed an extensive acrionectomy with debridement of the edges of the rotator cuff, and also performed a right carpal tunnel release.
19. On February 7, 1993, Dr. Marsigli performed an anterior cervical fusion at C4-5 due to ruptured disc and at C5-6 due to weakness.
20. Dr. Marsigli released plaintiff from treatment on August 6, 1993 with a permanent partial impairment rating of twenty-five percent to the spine and ten percent to the right shoulder.
21. Dr. Marsigli has opined that plaintiff's rotator cuff tear and ruptured disc were the result of plaintiff's fall in May of 1991. However, this opinion is not accepted. In deposition testimony, Dr. Marsigli admitted that he had never inquired as to the nature of plaintiff's work, and had no knowledge as to whether the nature of plaintiff's work was repetitive such as that it may be causative of a rotator cuff tear or carpal tunnel syndrome. Dr. Marsigli assumed that plaintiff performed heavy lifting as a maintenance worker. This assumption is inconsistent with the work duties to which plaintiff testified at the hearing. Further, plaintiff did not inform Dr. Marsigli as to his private lawn care business, and the physical requirements related thereto.
22. Dr. Marsigli has opined that a patient with a rotator cuff tear would have a gross weakness, and that would have been visible to other treating doctors. Dr. Marsigli also stated it was possible to sustain a partial tear of the rotator cuff from lifting lawn equipment or bags of clippings with the arm extended.
23. Dr. Bissram opined that a rotator cuff tear is not usually caused by trauma such as that described by plaintiff in the May 11, 1991 incident. Dr. Bissram noted that such injury is more commonly the result of a pitching motion of the arm or from a strain which tears the muscles, and not from a direct blow to the shoulder. He further related that the tear could be caused by repetitive overhead motion.
24. Frances Futrell, town clerk for defendant, received bills on July 30, 1992 regarding medical care received by plaintiff, and thereafter she requested that plaintiff report to her in order that a Form 19 could be completed. Ms. Futrell prepared the Form based upon plaintiff's answer to her questions. She advised plaintiff that the bills should be filed under the group health policy, as no workers' compensation claim had been filed.
25. The plaintiff worked full-time from May 1, 1991 through May 31, 1991. From June 1, 1991 through December 31, 1991, the plaintiff worked full-time, except for absences due to his well-established pattern of using all authorized leave.
26. There was no evidence that any absences during 1991 were due to right arm problems which resulted from the May 11, 1991 incident, and in fact, plaintiff had no medical authorization to be out of work due to the incident.
27. The plaintiff last worked for defendant on February 11, 1992, and in June of 1993, he advised that he would not be returning to work.
28. The plaintiff sustained an injury by accident arising out of and in the course of his employment on May 11, 1991.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. The plaintiff has failed to carry the burden of proving that he was disabled form work due to the incident on May 11, 1991. In fact, the plaintiff continued to work following the accident for approximately eight months. At the time plaintiff went out of work, he reported a February 1992 injury to two of his treating doctors. Therefore, any assertion by plaintiff that the disability from work was related to the May 11, 1991 accident is specifically not accepted as credible.
2. Plaintiff has failed to carry the burden of proving that the rotator cuff injury, carpal tunnel syndrome, or cervical disc rupture were causally related to the incident on May 11, 1991.Click v. Pilot Freight Carriers, 300 N.C. 164, 265 S.E.2d 389
(1980).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim is and under the law must be DENIED.
2. Each side shall bear its own costs for hearing before the Full Commission, except defendant shall pay an expert witness fee of $130.00 to Dr. John H. Stanley, if not already paid.
 S/ _________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _________________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _________________________ THOMAS J. BOLCH COMMISSIONER